**ALLEGHENY INTERNATIONAL CREDIT CORPORATION, Appellant,**

**v.**

**Gordon I. SEGAL, Bernard C. Arkules and the Bernard C. Arkules Family Trust, Individually, and d/b/a Structural Drilling Company, Appellees.**

**No. 05–86–01125–CV.**

Court of Appeals of Texas, Dallas.

July 8, 1987.

Rehearing Denied Sept. 11, 1987.

Don W. Davis, Dallas, for appellant.

W. Pruitt Ashworth, Robert H. Nunnally, Jr., Dallas, for appellees.

Before ENOCH, C.J., and BISSETT[1] and HUGHES[2], JJ.

ENOCH, Chief Justice.

This case is before this Court on the question of priority of lien rights with respect to a drilling rig and ancillary equipment. In three points of error, Allegheny International Credit Corporation (Allegheny) asserts error in the trial court's granting of a summary judgment against Allegheny and in favor of Gordon I. Segal, Bernard C. Arkules and the Bernard C. Arkules Family Trust, individually, and d/b/a Structural Drilling Company (Structural). This Court finds no merit in Alle-

1. The Honorable Gerald T. Bissett, Justice, retired, Court of Appeals, 13th District of Texas at Corpus Christi, sitting by assignment.

2. The Honorable W.A. Hughes, Justice, retired, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.

gheny's point of error 2. Because of our disposition, points of error 1 and 3 do not need to be addressed. Consequently, the trial court's judgment is affirmed.

## NATURE OF THE CASE

Structural originally sued Bowman Exploration & Drilling, Inc. and others (Bowman) for breach of a lease of a drilling rig and associated equipment. Allegheny intervened seeking a declaratory judgment and money damages against Structural. Allegheny alleged that its lien rights as to the rig were violated by Structural's repossession from Bowman of the rig and its subsequent sale at public auction without the proceeds of the sale being delivered to Allegheny.

The trial court severed the Intervention and realigned the parties with Allegheny as plaintiff and Structural as defendant. Each party filed a Motion for Summary Judgment. The trial court initially granted Allegheny's motion, but subsequently granted a *partial* new trial on the claim for monetary damages. However, upon reconsideration, the court granted Structural's motion in its entirety.

The final judgment, upon which this appeal is predicated, makes no mention of Allegheny's motion. However, no material facts are in dispute; consequently, we find the granting of Structural's motion constituted a denial of Allegheny's motion.

## FACTS OF THE CASE

In 1981, Structural purchased a Wilson Mogul 42 rig (rig) which was financed by a secured line of credit and term loan with First National Bank of Chicago (Bank). The loan was secured by a security agreement and financing statements covering collateral which included the rig. Structural was listed as *debtor* on the financing statements. On April 2, 1981, the Bank's security interest was perfected by the filing of the financing statement in Oklahoma where the rig was located.

Subsequent to the date of perfection of the security interest and on or about February 23, 1982, Sructural entered into a "lease" agreement with Bowman for the

rig and duly notified the Bank. The Bank was further advised that Bowman would be moving the rig to Texas from Oklahoma. On April 26, 1982, the Bank filed an additional financing statement in Texas. This financing statement, filed within four months of the rig's removal to Texas, contained the same information as the one filed in Oklahoma.

On October 19, 1982, Bowman executed a "Loan and Security Agreement—Term Loan" in favor of Allegheny. This security agreement included the rig as collateral for Bowman's loan from Allegheny. On October 22, 1982, Allegheny's security interest was perfected by filing in Texas.

In the original action below, the trial court determined the "lease" between Structural and Bowman to be, in fact, a *sale* of the rig from Structural to Bowman. Therefore, Structural had only an unperfected security interest in the rig after the transfer to Bowman. On November 5, 1982, Structural took possession of the rig due to Bowman's default on its obligation to Structural. The perfection, if any, of this security interest occurred only upon the repossession of the rig by Structural.

Subsequently, Structural sold the rig at public auction for $76,642.50. After subtracting expenses of the sale, the remaining proceeds of the sale in the amount of $56,939.75 were paid by Structural to the Bank. At the time of the sale, the debts owed by Structural to the Bank, and by Bowman to Structural and Allegheny all exceeded the proceeds realized at the auction.

## PRIORITY OF LIENS

Based upon the action of the trial court which is not challenged by the parties in this appeal, Allegheny's security interest, perfected October 22, 1982, has priority over Structural's security interest which was not perfected until November 5, 1982, the date of repossession. TEX.BUS & COM.CODE ANN. § 9.312(e)(1) (Tex. UCC) (Vernon Supp.1987) (the Code). Further, as argued by Allegheny, nothing that Structural did after perfection by Alleghe-

**554**

ny could affect Allegheny's security interest. Any party buying the rig at the auction took the rig subject to Allegheny's security interest. TEX. BUS. & COM. CODE ANN. § 9.306(b) (Tex. UCC) (Vernon Supp.1987). If it were not for the Bank's interest, we would agree that the proceeds, after expenses, from the auction were properly payable to Allegheny.

The real issue in this case is whether, upon the sale of the rig, Structural was correct in paying the proceeds to the Bank rather than to Allegheny. In point of error number 2, Allegheny asserts that the trial court erred in ruling that the Bank had a prior perfected security interest in the rig and, therefore, the proceeds of the sale of the rig were properly payable to the Bank.

To decide this issue, this Court must determine whether the Bank's otherwise prior perfected security interest was lost by some action it took or failed to take after the rig was sold to Bowman and brought to Texas.

Section 9.103(a)(4)(A) of the Code is a statutory mechanism for a perfected security interest holder in another state to *maintain* the perfection of its lien in the event the collateral is moved to this state. It provides, as applied to this case, that the perfection in Oklahoma of the security interest remains intact if, within four months of the removal of the collateral to Texas, the financing statement is filed in Texas.

It is undisputed that the Bank had a perfected security interest in Oklahoma and that it filed a financing statement in Texas within four months of the rig's removal from Oklahoma to Texas. However, it is Allegheny's position that the Bank's failure to file a financing statement in Texas listing *Bowman* as the "debtor" left the Bank's security interest in the rig unperfected in Texas. In support of its position, Allegheny cites section 9.105(a)(4) of the Code which states:

"Debtor" means the person who owes payment.... *Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral....*

(emphasis added).

Allegheny argues that the reference to "debtor" in section 9.105 relates to Bowman, a party who became a debtor *after* the Bank had first perfected its security interest in Oklahoma. Thus, Allegheny's security interest, being the *only* perfected security interest as to Bowman prior to repossession, had priority as to all other interests, including the Bank's.

Allegheny's view is not a proper reading of these provisions. The "debtor" mentioned in section 9.105 refers to the debtor that exists at the *inception* of the security interest whether or not the "owner" of the collateral subsequently changes.

To properly apply the provisions of section 9, it is necessary to reduce a secured transaction to its simplest elements. It is undisputed that the Bank had a perfected security interest in Oklahoma.

The first question is, could the sale of the rig to Bowman by Structural disturb the Bank's interest? The answer is no. *Marci v. First National Bank of Fort Smith*, 10 U.C.C.Rep. 227 (Okla.App.1982).[3]

In *Marci*, a buyer purchased a car from an Arkansas dealership through dealership financing and executed a financing statement. The buyer drove the car to Oklahoma and sold it to a third party. The car dealer assigned the loan and the assignee filed the financing statement within the statutory period for perfection in Oklahoma. This filing date, however, was after the sale of the car to the third party. On appeal, the Oklahoma court ruled that the security interest was properly perfected and, consequently, the third party purchaser took the car subject to the security interest. We are satisfied under these facts a similar result would prevail in Texas.

**3.** This court is mindful that *Marci* is an "unpublished" case from the Oklahoma Court of Appeals and, therefore, not available in Oklahoma to be cited as authority. This is similar to Rule 90(i) of the Texas Rules of Appellate Procedure which states that unpublished opinions are not citable authority. However, Structural asserts that since the U.C.C. Reporter published the case, it can be utilized as secondary authority. We agree.

555

TEX. BUS. & COM. CODE ANN. § 9.303(a) (Tex. UCC) (Vernon Supp.1987).

The second question is, could the removal of the rig to Texas by *Structural* disturb the Bank's interest? The answer is no, *unless* the Bank failed to file its financing statement in Texas within four months. TEX. BUS. & COM.CODE § 9.103(a)(4)(A).

The remaining concern, then, is whether the Code requires the Bank to file a new and *different (i.e.,* listing Bowman as "debtor") financing statement in Texas because of the sale to Bowman *and* then *Bowman's* removal of the rig to Texas? This Court finds no provision in the Code requiring such a filing.

To accept the argument of Allegheny that Bowman should have been listed as the "debtor" in Texas, is to say that the Bank was required to file a *new* financing statement in order to *maintain* the perfection pursuant to Section 9.103(a)(4)(A). This is not the import of that section.

It is this Court's position that once the Bank properly perfected its security interest in Oklahoma, it could not become unperfected by any action taken by either Structural or Bowman. This is in line with Allegheny's own argument, heretofore, that nothing that Structural could do after perfection by Allegheny would affect Allegheny's security interest. The mere fact that Bowman removed the rig to Texas does not alter this conclusion except as the Code provides that the Bank could lose its perfection if *it* did not refile *its* financing statement in Texas within four months of the move. Indeed, comment five to section 9.103 states:

(d) If the location of the debtor is moved after a security interest has been perfected in another jurisdiction, the secured party has four months within which to *refile,* unless the perfection in the original jurisdiction would have expired earlier.

(emphasis added).

None of the authority cited by Allegheny deals with facts similar to this case. In fact, each case cited on this issue involved the failure to file *any* financing statement in the state to which the collateral was moved. These authorities are inapposite.

Because we conclude that the Bank properly complied with the requirements of section 9.103(a)(4)(A) of the Texas UCC, we hold that the Bank maintained its lien priority over both Allegheny and Structural. As a result, the proceeds from the sale of the rig were properly payable to the Bank and the judgment of the trial court is correct. Allegheny's point of error two is overruled.

Because of the disposition of this case under point of error number two, this Court does not reach the issues presented in Allegheny's points of error one or three or Structural's Cross-points one and two.

The judgment of the trial court is AFFIRMED.